IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GNANA M. CHINNIAH a/k/a | : | CIVIL ACTION NO. **1:CV-08-1330** |
| GHANA CHANDRA M. CHINNIAH | : | |
| and SUGANTHINI CHINNIAH, | : | (Chief Judge Kane) |
| | : | |
| Plaintiffs | : | (Magistrate Judge Blewitt) |
| | : | |
| v. | : | |
| | : | |
| EAST PENNSBORO TOWNSHIP and | : | |
| JEFFREY S. SCHULTZ, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

On July 14, 2008, Plaintiffs Gnana M. Chinniah, a/k/a Ghanchandra M. Chinniah, and his wife, Suganthini Chinniah, filed, through counsel, their original Complaint against Defendants East Pennsboro Township ("EPT") and Jeffery S. Shultz, EPT Building Code Official, alleging violations of their constitutional rights under 42 U.S.C. §1983.[1] (Doc. 1). In their original Complaint, Plaintiffs alleged that Defendants took discriminatory actions against them regarding their (Plaintiffs') property in Defendant Township. Defendant Shultz filed his Answer with Affirmative Defenses to Plaintiffs' original Complaint on September 24, 2008. (Doc. 4). Defendant EPT filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' original Complaint on September 24, 2008, arguing that Plaintiffs' Complaint failed to state a municipal liability claim against it under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). (Doc. 5). On November 18, 2008, the Court granted Defendant EPT's Motion to

---

[1]We note  that while Plaintiffs have had three attorneys representing them in this action, Plaintiffs are currently proceeding *pro se.*   (Doc. 149).

Dismiss and gave Plaintiffs leave to file an amended Complaint. (Doc. 11). Plaintiffs filed their

Amended Complaint on December 8, 2008. (Doc. 14).

On December 12, 2008, Defendant EPT filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs'

Amended Complaint. (Doc. 16). Defendant EPT argued that Plaintiffs' Amended Complaint again

failed to state a municipal liability claim against it under *Monell*. On March 12, 2009, the Court

issued a Memorandum and Order and denied Defendant EPT's Motion to Dismiss Plaintiffs'

Amended Complaint. (Doc. 23). On March 26, 2009, both Defendants filed an Answer to

Plaintiffs' Amended Complaint. (Doc. 25).

In its March 12, 2009 Memorandum, the Court stated the following factual background of

this case as follows:

> On or about September 5, 2007, Plaintiffs Ghana and Suganthini Chinniah, individuals
> of Indian descent who practice Hindu, purchased property in East Pennsboro
> Township which was divided into three parcels (3A, 3B, and 3C). (Doc. No. 1 ¶ 5.)
> Two partially-completed townhouse structures consisting of a concrete foundation,
> framing, siding, doors, windows and a roof structure were situated on Plaintiffs'
> property at the time of purchase. (Doc. No. 1 ¶¶ 7, 9.) On or about the time of
> purchase, Plaintiffs spoke to the township zoning officer, township solicitor, and
> Defendant Shultz about obtaining the necessary permits to finish construction of the
> buildings on their property. (Doc. No. 1 ¶ 19.) On October 11, 2007, Plaintiffs were
> issued construction permits to "Finish Interior of Dwelling Including HVAC, Electrical,
> Plumbing, Drywall, Carpet, Deck and Landscaping." (Doc. No. 1 ¶¶ 23-24.) After
> Plaintiffs had completed some initial improvements to the townhouse on lot 3A,
> Plaintiffs requested that Defendant Shultz perform an inspection of the plumbing work
> and insulation. (Doc. No. 1 ¶¶ 28-29.) On the day of the inspection, however,
> Plaintiffs' plumber was unavailable. (Doc. No. 1 ¶ 28.) Rather than perform the
> requested plumbing inspection, Defendant Shultz conducted a framing inspection,
> during which he determined that the insulation and partial drywall installed by
> Plaintiffs needed to be removed. (Doc. No. 1 ¶ 29.)
> Defendant Shultz issued a "stop work order" against all three lots because full framing
> inspections had not been completed. (Doc. No. 1 ¶ 34.) Plaintiffs objected to the
> imposition of a "stop work order" in the Court of Common Pleas on the grounds that
> the framing had been completed by the prior owners, nearly seven years before

Plaintiffs began their improvements. (Doc. No. 1 ¶ 35.) The "stop work order" was enjoined. ( *Id.*)

Since that time, Plaintiffs allege that Defendants have enforced other township ordinances incorrectly against them while ignoring other, "more serious violations" by non-Indian land owners. (Doc. No. 1 ¶ 38, 39.) Additionally, Plaintiffs allege that when Mr. Chinniah pointed out the inequitable conduct and suggested that other non-Indian landowners were receiving more favorable treatment, instead of rectifying the misconduct, an unidentified employee notified other landowners that Mr. Chinniah was bringing an action against them. (Doc. No. 1 ¶ 40.) As a result of this misinformation, Mr. Chinniah received threats to his personal safety from another landowner. (Doc. No 1 ¶ 40.) Although Mr. Chinniah reported the threats and intimidation to the township, he was told no action would be taken against the perpetrator. (Doc. No. 1 ¶ 41.).

(Doc. 23, pp. 1- 2).[2]

The Court also stated as follows:

Plaintiffs allege that Defendant Shultz issued a "stop work order" to Plaintiffs; that the township defended that order in court; that the township continued to enforce its ordinances against Plaintiffs, preventing them from completing construction despite the injunction against enforcement of the "stop work order;" that the township failed to take action against a similarly situated non-Indian neighbor of Plaintiffs for violations "more serious" than Plaintiffs'; and that the township showed deliberate indifference to their safety by disclosing to Plaintiffs' neighbors that Plaintiffs had made a complaint about their building code violations. Further, Plaintiffs allege that township officials treated them less favorably and demonstrated indifference to their safety when Plaintiffs reported threats and intimidation to the township both personally and through their attorney. Lastly, Plaintiffs allege that the township officials had knowledge of all these discriminatory events. (Am.Comp. ¶ ¶ 45-51.) While a municipality has discretion in enforcing its laws, selective enforcement can amount to an equal protection violation even if the plaintiff is guilty of the underlying violation. *Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 425 (3d Cir.2003).

Doc. 23, pp. 5- 6).

------

[2]*See also* 2009 WL 700623 (M.D. Pa. 3-12-09).

Thus, as the Court stated in its March 12, 2009 Memorandum, "Plaintiffs claim that, as ethnic and religious minorities, their right to equal protection of the laws was violated by [EPT] because [EPT] selectively enforced construction and building ordinances against them." (*Id.*, p. 4).

The Court concluded as follows:

> Taking all allegations as true, the Court finds that Plaintiffs have sufficiently alleged a custom of discrimination at the township that could establish liability under *Monell.* Plaintiffs allege that the township officials' knowledge of discriminatory practices by its employees against Indians began with the initial "stop work order" issued against Plaintiffs for work that had been done by the prior owners. When the other allegations-the court proceedings, the continuing inspections against the Plaintiffs despite a court-ordered injunction, the disclosure to Plaintiffs' neighbors that Plaintiff made allegations against them, and the failure to inspect non-Indian landowners' property for violations-are added, Plaintiffs have sufficiently alleged a pattern of discrimination. When coupled with the officials' knowledge of it, this pattern of discrimination is a sufficient allegation of a custom of discrimination on the part of the township. This is not to say the allegations are proved, but taking all allegations as true, the Court finds that Plaintiffs have alleged a custom of discrimination on the part of the township.

(Doc. 23, p. 6).

Therefore, the Court found that Plaintiffs' Amended Complaint "sufficiently alleged a §1983 equal protection claim against [Defendant EPT]." (*Id.*).

Following extensive discovery, including the depositions of Mr. Chinniah, EPT Manager Robert Gill and EPT Commissioner James Hertzler, Defendants jointly filed a Motion for Summary Judgment, pursuant to Fed.R.Civ. P. 56, on February 18, 2011. **(Doc. 104).** Defendants filed an Appendix of Exhibits (Exs. 1-21) with their Motion. Also, on February 18, 2011, Defendants filed their support brief and Statement of Material Facts ("SMF"). (Docs. 105 and 106). The Court allowed the parties additional time for discovery and gave Plaintiffs an extension of time to file their opposition brief. On April 1, 2011, Plaintiffs filed their opposition brief with Exhibits. (Docs. 119-

4

131).[3]  Plaintiffs also filed their response to Defendants' SMF.  (Doc. 132).  Defendants filed their reply brief on April 28, 2011.  (Doc. 136).  Defendants also submitted additional Exhibits along with their reply brief.  (Doc. 137).

Defendants' Summary Judgment Motion is ripe for disposition.

On April 29, 2011, the Court assigned the undersigned to issue a Report and Recommendation regarding Defendants' Summary Judgment Motion.  (Doc. 138).  Oral argument was conducted regarding Defendants' Summary Judgment Motion on June 22, 2011.  (Docs. 151 and 152).[4]

## II. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law.  *Anderson*, 477

---

[3] We refer to Plaintiffs' Exhibits herein simply as Plaintiffs' Ex. followed by the  number. All of Plaintiffs' Exhibits were bound together in a single binder.

[4]As noted above, Plaintiffs' opposition brief was filed by their former counsel.  However, at the time of oral argument, Plaintiffs were proceeding *pro se* and Mr. Chinniah argued on behalf of Plaintiffs.  It is also noted, that after oral argument, the Court referred this case to Magistrate Judge Carlson for a settlement conference.  (*See* Doc. 154).

U.S. at 248.  "Facts that could alter the outcome are material facts."  *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings,

legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90.

## III.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[5]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

---

[5]There is no dispute that Defendants are a municipal agency and a state actor.  *See D'Altilio v. Dover Tp.*, 2009 WL 2948524, *3 (M.D. Pa. 9-14-09).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra*.

**IV. Material Facts**.

As mentioned, Defendants properly submitted their SMF (Doc. 106, ¶'s 1-16) with their Summary Judgment Motion and Plaintiffs filed their response to it (Doc. 132).  Defendants' SMF are, in part, supported by citation to the record.  Paragraphs 1, 3, 4, 5, 6 and 16 of Defendants' SMF (Doc. 106) are not supported by citation to the record.  Also, Plaintiffs' responses to Defendants' SMF which, in part, supplement the SMF do not cite to the record.  Regardless of the

parties failure to follow Local Rule 56.1, since the parties agree, in part, upon many of Defendants' SMF, we consider all of Defendants' SMF and all of Plaintiffs' responses to them.  Plaintiffs also attached to their response to Defendants' SMF,  their own Statement of Disputed Facts, Doc. 132, pp. 8-10, ¶'s 1-10.  However, Local Rule 56.1, M.D. Pa., does not permit a counter statement of material facts to be filed by the nonmoving party.  Further, Plaintiffs did not cite to the record to support any of their counter statements of material facts and portions of Plaintiffs' counter statement of material facts consist of legal conclusions.  As such, we do not consider Plaintiffs' unsupported counter statements as material facts.[6]

Based on Defendants' SMF and Plaintiffs responses thereto (Docs. 106 and 132,  ¶'s 1-16), we find the following facts to be undisputed:

1.       3 Cassatt Street is located in Nola, East Pennsboro Township, Pennsylvania. It was originally conceived as a (sic) three separate units, Units 3A, 3B and 3C ["the property"].  It was [originally] owned by Timothy Mowery.  Construction was started several years ago but was never finished.

Plaintiffs also state that the parties dispute whether prior to 2007 and their purchase of the property, inspections of the Units were conducted after construction began by Mowery, including framing inspection.  Plaintiffs state that whether the prior framing inspection occurred and the effect of the prior inspection are in dispute.[7]

---

[6]As noted, Plaintiffs were represented by counsel when their opposition brief was filed, and their response to Defendants' SMF and their Statement of Disputed Facts were filed.  (Docs. 119 & 132).

[7]We refer to the 3 Cassatt Street, Enola, East Pennsboro Township, Pennsylvania, property herein, which was purchased by the Plaintiffs on September 5, 2007,  as "the

2.    In June 2007 the Township wrote to Mr. Mowery advising him that his building permit had expired.  He had to get a new permit and finish the construction.  Appendix to Defendants' Motion for Summary Judgment (Appendix), Ex. 1.

Plaintiffs also state that the parties dispute whether the new permit required an inspection of the framing at the property.

3.    The property was purchased by the Plaintiffs in September [5] 2007.  Mr. Chinniah met with the Township Building Code Official (Mr. Shultz), the head of the Department of Housing & Community Development (John Owen), the Township Solicitor (Henry Coyne), and Mr. Chinniah's then attorney (Douglas Miller).  The purpose of the meeting was to discuss what had to be done to make the building habitable.

4.    Recollections differ as to what was agreed at the [September 5, 2007] meeting.  Plaintiffs state that the parties dispute the terms of the agreement which was reached as to what they had to do to get their property to pass inspection and to make their property habitable.  Plaintiffs also state that a November 20, 2007 correspondence from their counsel detailed the agreement of the parties, but that the parties dispute the effect of this correspondence.  (*See* Plaintiffs' Ex. 11).

According to the November 20, 2007 letter from Plaintiffs' counsel to Defendant Shultz regarding, in part, the September 5, 2007 meeting, the following agreement of the parties was reached:

I must strongly disagree with your [Shultz's] characterization of the meeting held on September 5, 2007.  The purpose of that meeting was that work already performed at the properties prior to Mr. Chinniah's ownership was not going to be altered, but would instead be subject to the building code or codes in existence at the time of original construction.  I believe I emphasized that point several times.  The specific building code issues going forward that we discussed at that meeting were: 1) Necessary insulation and fire wall to be installed; 2) Electrical wiring in the party (sic) wall area needed

property."

to have armored cable (which Mr. Chinniah did have installed by his contractor and inspected by the third party electrical inspector); and 3) Fire retardant spray or stripping for the eaves of the roof.

At no time do I recall discussing the need for a framing inspection. Furthermore, your assertion that no inspection of the framing was performed does not appear to be supported by the objective evidence.   First, the framing at the property has been constructed and completed since approximately 2000.  The Township has performed multiple inspections and site visits at the properties since that time.  This construction time frame preceded your hiring by East Pennsboro Township, and I understand that having the proper paperwork in that file has been an issue.  You have also visited the property on several occasions, however, and discussed "finishing requirements" with the prior owner, Mr. Mowery.  Second, my client has multiple photographs of several notations made in your handwriting to the insulated walls of the properties.  These notations are made in between the framing and reference the type of drywall to be used in accordance with the fire code in place at that time.  There has therefore been both opportunity for and evidence of the framing inspection having been completed.

(Plaintiffs' Ex. 11).

5.    Mr. Shultz and Mr. Owen recall that [on September 5, 2007] all agreed the Pennsylvania Uniform Construction Code (UCC) would be applicable and that the existing foundation and wooden framing for the walls and ceilings [of the property] would be grandfathered and would not have to comply with the UCC.

The parties dispute whether Defendant Shultz made it clear at the September 5, 2007 meeting that once construction by Plaintiffs started, Shultz would have to perform a "framing inspection" and that this would allow the existing framing to remain, but it would require compliance with the fire stopping provisions of the PA UCC.   Plaintiffs contend that the framing at the property performed by Mowery, which was previously approved by EPT,  was grandfathered in and was compliant with the building code in effect at the time, prior to the enactment of the PA UCC.

6.     Fire stopping refers to the need to seal the holes made in wall studs and ceilings where they are penetrated by such things as wiring, conduit, plumbing, etc.  The fire stopping is important because it prevents fire from spreading behind walls and through ceilings.  Unfortunately no records were kept of the [September 5, 2007] meeting.

Plaintiffs assert that the rough wiring, plumbing, and penetrations associated with their installation all existed prior to their purchase [of the property] on September 5, 2007.  As a response to Defendant Shultz's comments made on November 2, 2007, Plaintiffs contend that they were already sealing the penetrations made by the previous owner [Mowery], and that  the premature and illegal stop work order issued by Defendants prevented the completion of few remaining holes found during the inspection conducted on January 18, 2008.  Therefore, Plaintiffs state that the legality of the Stop Work and its proper application is in dispute.  (Doc. 132, ¶ 6).

7.     At the time Units 3A and 3B had been partially completed.  Unit 3C had not been started.   The Plaintiffs were duly issued construction permits on October 1, 2007. [Doc. 104],  Appendix, Ex. 2, 3.[8]

Plaintiffs point out that the Unit 3C was the vacant portion of the lot at the time and that construction did not yet start on Unit 3C.  Plaintiffs further state that subsequent to their acquisition of the lot, Mr. Chinniah was advised by Mr. John Owen and others that the vacant Lot 3C would have to be used "sacrificially" to create the extra parking spaces required for the 2-Unit apartment in Lot 3B to meet their Ordinance enacted middle of 2007.  (*See* Plaintiffs' Ex. 10).

---

[8]According to Defendants' Exhibits, the Plaintiffs were issued construction permits for the property on October 11, 2007.  (Doc. 104, Exs. 2 and 3).

8.      Mr. Shultz performed a framing inspection [of the property] on November 2, 2007.  He found that drywall and insulation had been installed which prevented him from inspecting the fire stopping.  He prepared a report listing the deficiencies.  Appendix, [Doc. 104] Ex. 4.

Plaintiffs contend that the November 2, 2007 framing inspection Defendant Shultz performed was contrary to their permit. Plaintiffs state:

There was previously inspected framing, rough wiring and plumbing which had been installed by the prior owner [Mowery].  Mr. Shultz prepared a report listing alleged deficiencies, and ignoring the prior inspection.  The effect and legality of that inspection is in dispute.

9.      Mr. Chinniah then visited the Township on November 8, 2007 and discussed the situation with Mr. Owen and Mr. Shultz.  Evidently he [Mr. Chinniah] would not agree with exposing the areas for inspection and the installation of a fire separation wall.  He [Mr. Chinniah] left the meeting and stated that the Township would hear from his attorney.  See the letter from Mr. Shultz to Attorney Miller dated November 16, 2007, p. 2. [Doc. 104] Appendix, Ex. 5.

In response to Defendants' ¶ 9, Plaintiffs state as follows:

Although Mr. Chinniah attempted to work with Mr. Owen and Mr. Shultz, he reminded them, *inter alia*, of the prior inspection(s) and the aforementioned prior meeting with him and his then counsel, Douglas Miller, Esquire. At the conclusion of the meeting, Mr. Chinniah advised that he would have his attorney contact the Township to clarify the need to remove any drywall installed in the ceilings.  (See Appendix to Defendants' Motion for Summary Judgment, Exhibit 5 - correspondence from Mr. Shultz to attorney Miller dated November 16, 2007, and attorney Miller's correspondence dated November 20, 2007, Exhibit 7).

10.     That letter [correspondence from Mr. Shultz to attorney Miller dated November 16, 2007] offered the Plaintiffs an opportunity to remove the insulation and drywall to permit an inspection or to take an appeal to the Capital Area Council of Governments Board of Appeals.  Mr. Shultz also wrote to Mr. Chinniah on November 19, 2007 stating that because of the

> violations noted on November 2, no further work would be permitted. [Doc.
> 104] Appendix, Ex. 6.

Plaintiffs state that the parties dispute the legality of the Stop Work Order as well as the

legality of the November 2, 2007 framing inspection Defendant Shultz performed at the property.

> 11.   Attorney Miller responded to Mr. Shultz by letter dated November 20,
>       2007 disagreeing with Mr. Shultz and recommending that Mr. Chinniah
>       take an appeal.  Appendix, Ex. 7.  Mr. Shultz issued a Stop Work Order on
>       that same date.  Appendix, Ex. 8.

Plaintiffs contend that Defendant Shultz issued the Stop Work Order as to Units 3A and 3B,

which they state were not inspected and as to Unit 3C, a vacant lot, in response to their attorney's

November 20, 2007 letter.   (Doc. 132, ¶ 11).

> 12.   Instead of appealing [the Stop Work Order] Plaintiffs filed a motion for
>       injunction with the Court of Common Pleas of Cumberland County.  After
>       a hearing the court entered an order on January 15, 2008.  Appendix, Ex.
>       9.  As can be seen, [the Order]  largely permitted the Township to make the
>       inspections it had desired.

Plaintiffs state that the Stop Work Order was illegally issued and that the County Court's

January 15, 2008 Order was in their favor.  Further, Plaintiffs state that "[i]t was promised by the

Defendants that the Stop Work Order would be lifted immediately[]" but that "[i]t was not."  Doc.

132, ¶ 12.

The County Court's January 15, 2008 Order directed, in pertinent part, as follows:

> 1.  The stop work order issued against lot 3-B, Cassatt Street, Nola,
> Pennsylvania, is hereby lifted effective immediately.   Plaintiff shall not
> perform any drywall or insulation work prior to appropriate inspections by
> Defendants or their approved representatives;

14

2.  With regard to lot 3-A, Cassatt Street, Nola, Pennsylvania, Plaintiffs and Defendants have agreed to a meeting at the property to be held to identify areas to be randomly inspected by Defendants or their approved representatives;

3.  After being notified by Plaintiffs, Defendants or their approved representatives shall perform standard code inspections of both properties identified herein[.]

(Doc. 104, Ex. 9).

13.   On January 18, 2008 Mr. Shultz, Mr. Owen, and Mr. Gould along with Mr. Chinniah and Attorney Miller met on the site so that Mr. Shultz could indicate what insulation and drywall should be removed to permit an inspection. While there are different versions of what transpired, it is clear that Mr. Chinniah never requested Mr. Shultz to return and inspect.  Handwritten accounts of that meeting were prepared by the Township representatives. Collectively, Appendix, Ex. 10.

Also, Plaintiffs state that "the meeting was ended inconclusively" and that Defendant EPT's

agents "persisted in their efforts to impose illegal and arbitrary requirements upon the Plaintiffs."

(Doc. 132, ¶ 13).

14.   Mr. Chinniah had filed written complaints with the Township about the condition of 4 Cassatt Street [Roadcap's property] in November 2007 and February 2008.  Appendix, Ex. 11, 12.[9]

15.   Mr. Chinniah also made a complaint on April 15, 2008 to the Township Police Department about the alleged threat [by Roadcap].  The police responded and interviewed Mr. Chinniah. The police report states that Mr. Chinniah did not identify the person who threatened him.  Appendix, Ex. 13.

---

[9]4 Cassatt Street property was adjacent to Plaintiffs' property and  owned by Tex Roadcap.   Roadcap had a garage in which he repaired vehicles and Plaintiff Mr. Chinniah complained to EPT that Roadcap was violating EPT's rules regarding  the repair and parking of unlicensed vehicles on private property along the street.  *See* Doc. 104, Exs. 11 and 12.

Plaintiffs state that after the EPT police interviewed Mr. Chinniah about the threat from Roadcap, the police  did not respond to the person who allegedly threatened him, and that the Police Report is erroneous insofar as it states that Mr. Chinniah did not identify the person who he claims threatened him.[10]  (Doc. 132,  ¶ 15).

> 16.    Mr. Chinniah had also stated that when he complained about the lack of action, Police Chief McMaster stated, "Haven't you heard of freedom of speech?"   There is no written record of this conversation.

Plaintiffs state that Mr. Chinniah's prior legal counsel checked the background of the neighboring property owner, Tex Roadcap who allegedly intimidated Mr. Chinniah and contacted the Township Manager *via* telephone on April 22, 2008, and followed with an email on April 29, 2008, to express his concerns regarding this threat which resulted from one or more code officials breaching the confidentiality of Mr. Chinniah's complaints.

Plaintiffs' Ex. 1 is a copy of the email their former counsel sent to Robert Gill, EPT Manager, on April 29, 2008, in which Plaintiffs' counsel complained, in part, about a breach of confidentiality by EPT officials regarding Mr. Chinniah's complaints about Roadcap which resulted in the threatening conduct by Roadcap against Plaintiff.

---

[10]We find the evidence disputed as to whether Mr. Chinniah identified Tex Roadcap to the EPT Police as the person who he claimed threatened him, and whether Defendants and EPT officials advised  Roadcap that Plaintiff Mr. Chinniah complained to EPT that Roadcap was violating EPT's rules regarding  the repair and parking of unlicensed vehicles on private property along the street.

**V. Discussion.**

As stated, Plaintiffs raise §1983 equal protection claims against Defendants EPT and Shultz in their Amended Complaint. (Doc. 14). Plaintiffs' claim against Defendant EPT is brought under *Monell*. (*See* Doc. 23). *See Connick v. Thompson*, –U.S.–, 131 S.Ct. 1350, 1359 (2011). Plaintiffs allege that there was disparate enforcement and application of the PA UCC and, EPT's property maintenance requirements and laws as well as zoning regulations based on their Indian national origin and their Hindu religion. Plaintiffs allege that Defendants did not apply the stated requirements and regulations evenly in the Township and that Defendants failed to take similar enforcement against similarly situated non-Indian property owners.  Plaintiffs further allege that Defendants had a pattern of enforcing PA UCC's and EPT's building ordinances and regulations disparately and, that they took enforcement action against them and other property owners of Indian descent, such as the Kapoors, while ignoring more serious violations by other similarly situated non-Indian and non-Hindu property owners, such as Tex Roadcap.  Plaintiffs also allege that Mr. Chinniah informed EPT of serious ordinance violations committed by Tex Roadcap, a similarly situated non-Indian landowner who owned property adjacent to Plaintiffs' property, and that Defendants refused to enforce the property maintenance ordinances against Roadcap.  Further, Plaintiffs indicate that Defendants informed Roadcap of the November 2007 and February 2008 complaints Mr. Chinniah lodged against him, and that Roadcap threatened Mr. Chinniah. (*See* Doc. 104, Exs. 11 and 12).  Additionally, Plaintiffs' evidence shows  that on April 15, 2008, Roadcap threatened Mr. Chinniah due to Chinniah's complaints against him,  that Mr. Chinniah and his attorney reported the threats to EPT, and that EPT refused to take action against Roadcap.  Plaintiffs

point out that Roadcap's ordinance violations caused damage to their property, including their sidewalk and curb areas, and that they could not ever finish the work on their property since they did not feel safe due to Roadcap's threats.  Consequently, Plaintiffs state that they have not been able to return to their property to the present day and complete the work despite the fact that they have had to continue to pay the mortgage and taxes on the property.

Initially, we agree with Defendants that to the extent Plaintiffs sue Defendant Shultz in his official capacity and they seek monetary damages against him, they (Defendants) are entitled to summary judgment with respect to these damages claims.  (Doc. 105, pp. 8-9).  As Defendants point out, Plaintiffs did not state in their pleadings if they sued the  individual Defendant Shultz in both his personal and official capacities.  We agree with Defendants and find that, insofar as Plaintiffs seek monetary damages against Defendant Shultz, Plaintiffs can only sue Defendant Schultz in his  individual or personal capacity.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);  *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential); *Dougherty v. Snyder*, 2011 WL 1871226, *12 (M.D. Pa. 5-16-11); *Van Tassel v. Lawrence County Domestic Relations Section*, 659 F.Supp. 2d 672, 695-696 (W.D. Pa. 2009). Thus, we will recommend that Defendants' Summary Judgment Motion be granted with respect to Plaintiffs' claims for monetary damages against  Defendant Shultz in his  official capacity.  *See Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);*Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

Additionally, as Defendants correctly state (*Id*.) to the extent Plaintiffs sue Defendant Shultz in his official capacity, their action against him is the same as their action against Defendant EPT. Plaintiffs' equal protection claim against Defendant Schultz in his official capacity is treated the same as a claim against Defendant EPT.  Thus, we will recommend that the Court grant Defendants' Summary Judgment with respect to Plaintiffs' equal protection claim against Defendant Schultz in his official capacity.  *See Stacy v. City of Hermitage,* 178 Fed. Appx. 94, 100 (3d Cir. 2006)(citation omitted)("any claims against the individual City Defendants in their official capacities should be dismissed because these claims are treated as claims against the City itself."); *Delaney v. Cambria County Sheriffs Dept*., 2006 WL 1437174 (W.D. Pa.); *Tri Thanh Nguyen v. Franklin County Sheriff's Dept*., Civil No. 10-1866, M.D. Pa.

Insofar as Plaintiffs' Amended Complaint (Doc. 14, p. 12, ¶ 54) alleges that Defendants' conduct "denied [them] due process of law and equal protection of the law," we do not find that the parties address in their briefs a separate due process claim.  Nor did the parties address a separate due process claim at the June 22, 2011oral argument. In *Development Group, LLC v. Franklin Tp. Bd. of Supervisors,* the Court stated that for a Plaintiff to successfully make out a claim for procedural due process under § 1983, a Plaintiff must (1) "assert that Defendants, acting under color of state law, deprived Plaintiffs of a protected property interest," and (2) that the "local and state procedures for challenging the deprivation are inadequate."  2003 WL 22358440, at * 7- 8 (E.D. Pa. September 24, 2003).  In *Franklin Township*, the Court found that, "[a] state provides constitutionally adequate procedural due process when it provides 'reasonable remedies to rectify a legal error by a local administrative body.'  *Id*. (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53

F.3d 592, 597 (3d Cir. 1995), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). *Franklin Township* also established that "when a state affords a 'full judicial mechanism' with which to challenge administrative decisions," then a state has provided adequate procedural due process, "regardless of whether the plaintiff avails herself of that appeal mechanism." *Id*. at * 8. (*quoting Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991), *overruled on other grounds by United Artists*, 316 F.3d at 400) (Citations omitted).

We find in this case, as discussed above, the evidence is undisputed that adequate procedures existed under state law to remedy the alleged erroneous decision rendered by Defendants when they issued the Stop Work Order to enjoin the construction of Plaintiffs' property. Further, we find that the Plaintiffs availed themselves of the available state procedures with respect to Defendants' Stop Work Order.   As discussed above, Plaintiffs did not appeal the Stop Work Order, rather, they filed an Injunction Motion in County Court to lift the Stop Work Order. On January 15, 2008, the County Court issued an Order and lifted the Stop Work Order effective immediately.   (Doc. 104, Ex. 9).

The County Court proceeding can certainly be said to have provided the Plaintiffs with ample opportunity to be heard.  Further, Plaintiffs state that the County Court's January 15, 2008 Order lifting the Stop Work Order was issued in their favor.

In *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990), the Supreme Court stated:

> A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself

unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. (Citations omitted). The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

The record is clear in the instant case that an adequate state remedy existed for the Plaintiffs, that the Plaintiffs utilized this remedy, and that this remedy was relevant to Plaintiffs' § 1983 procedural due process claim, as the *Zinermon* Court stated.

We find that the state procedures for Plaintiffs' challenge of the Stop Work Order issued by Defendants were adequate and that the state, *via* the Court of Common Pleas, by lifting the Stop Work Order effectively immediately, provided "reasonable remedies to rectify a legal error by a local administrative body." *DeBlasio*, 53 F.3d at 597. As the *Franklin Township* Court stated, the state has provided an adequate procedural process when it affords Plaintiffs a full judicial mechanism with which to challenge the state decision, regardless of whether the Plaintiffs avail themselves of this mechanism. *Franklin Township*, 2003 WL 22358440, at * 8.

The Court in *Lonzetta Trucking and Excavating, Co. v. Hazle Township Zoning Board*, considered a similar procedural due process claim regarding the closing of a quarry by zoning officials prior to a hearing, and the Court dismissed this claim since the state provided an adequate process to address the closing. 2005 WL 3277996, at * 1 (M.D. Pa. Dec, 2, 2005); *Lonzetta Trucking and Excavating, Co. v. Schan*, 144 Fed.Appx. 206 (3d Cir. 2005); Desi's Pizza, Civil No. 01-0480, M.D. Pa. (8-23-06 Memorandum).

Thus, we shall recommend that Defendants' Motion for Summary Judgment (Doc. 104) be granted to the extent Plaintiffs are deemed as raising a separate procedural due process claim.

Moreover, we do not find that Plaintiffs have alleged a substantive due process claim in their Amended Complaint. The Third Circuit stated, "[w]e have serious doubts whether the Plaintiffs' allegations state a substantive due process claim." *Desi's Pizza*, 321 F.3d at 427.

Regarding issues of substantive process, the Fourteenth Amendment provides, in part, that "no State [shall] deprive any person of life, liberty, or property without the due process of law...." U.S. Const. Amend. XIV, § 1. "To prevail on a substantive due process claim under §1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates Ltd. v. W.J. Gretkowski, et al.*,205 F.3d 118 (3d. Cir. 2000). "[A] substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a 'particular quality of property interest.' " *Woodwind Estates Ltd.*, 205 F.3d at 122, *citing Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 1179 (3d Cir.1997).

In *Desi's Pizza*, the Third Circuit stated:

> To obtain relief under the substantive component of the Due Process Clause for a deprivation of property, a plaintiff must make two showings. First, the plaintiff must "establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000). While the case law concerning which property interests are protected "provides very little guidance," *Homar v. Gilbert*, 89 F.3d 1009, 1021 (3d Cir. 1996), one general principle is clear: 'whether a certain property interest' is constitutionally protected 'is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United

States Constitution." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000); *see also Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002) (Citations omitted).   Second, the plaintiff must show that a governmental actor's behavior in depriving him of the interest in question was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

321 F.3d at 426-27.

Herein, we do not find that Plaintiffs have properly alleged that Defendants deprived them of the lawful use of their property and we do not find that they have stated a substantive due process claim. (Doc. 14).  As stated above, we do not find that Plaintiffs and Defendants  address in their briefs whether Plaintiffs raised a substantive due process claim. Thus, to the extent Plaintiffs are deemed as raising a substantive due process claim, they have not met the threshold establishment that they have been deprived of a fundamental right protected by the Fourteenth Amendment. *Woodwind Estates Ltd.*, 205 F.3d at 122;  *Galanopoulas v. Smithgall*, 2005 WL 196441, at *4 (E.D. Pa. January, 26, 2005) (citing *Independent Enterprises. V. Pittsburgh Water*, 103 F.3d 1165, 1179-80 (3d Cir. 1997)).

Thus, we shall recommend that Defendants' Motion for Summary Judgment (Doc. 104) be granted to the extent Plaintiffs are deemed as raising a separate substantive due process claim.

We now discuss Plaintiffs' §1983 equal protection claims against Defendant Shultz in his individual capacity and against Defendant EPT.  We do not agree with Defendants, who state in part,  that in addition to Plaintiffs' §1983 claim,  "presumably the Plaintiffs are proceeding under §1981(a) of the United States Code." (Doc. 105, p. 10).  As discussed above, the Court in its March 12, 2009 Memorandum clearly found that Plaintiffs were asserting §1983 equal protection claims

against Defendants.  (*See* Doc. 23).

Since Plaintiffs allege that they were treated differently by Defendants with respect to the manner in which EPT enforced construction and building ordinances and rules against them and that the ordinances were selectively enforced against them based on their national origin and religion, their §1983 equal protection claims are based upon their membership in a protected class. *See D'Altilio v. Dover Tp.*, 2009 WL 2948524, *4 (M.D. Pa. 9-14-09)(national origin is a suspect class)(citation omitted).

We agree with Plaintiffs that, in viewing the evidence in a light most favorable to them and in drawing all justifiable and reasonable inferences in their favor, there are genuine issues of material fact which preclude the granting of Defendants' Summary Judgment Motion with respect to Plaintiffs' equal protection claims.  *See MARJAC, supra*.  We find that Plaintiffs have submitted evidence "on which the jury could reasonably find for [them]."  *Anderson*, 477 U.S. at 252.  We concur with Plaintiffs' extensive statement of the evidence, which we find is disputed, with respect to their equal protection claims against Defendants.  (Doc. 119, pp. 10-24).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F.Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

The Fourteenth Amendment equal protection clause prohibits state officials from exercising their discretionary authority in an intentionally discriminatory purpose. *See Johnson v. Anhorn*, 416 F.Supp.3d 338 (E.D. Pa. 2006).

The Court in *Johnson*, 416 F.Supp.2d at 376, also stated that, "[i]n order for a § 1983 plaintiff to survive a motion for summary judgment where intent is an element of his claim, the plaintiff must provide "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." (quoting *Crawford-El*, 523 U.S. at 600). To establish their equal protection claim, the Plaintiffs are required to produce evidence that a discriminatory purpose was a motivating factor in the Defendants' actions to selectively enforce PA UCC's and EPT's property maintenance requirements and laws as well as zoning regulations based on their Indian national origin and their Hindu religion.  Thus, Plaintiffs must show that Defendants treated similarly situated property owners who were not Indian and Hindus differently. *See D'Altilio v. Dover Tp.*, 2009 WL 2948524, *4.  As stated, we find that Plaintiffs have provided an extensive rendition of the disputed evidence with respect to their equal protection claims against Defendants. (Doc. 119, pp. 10-24).

In *D'Altilio v. Dover Tp.*, 2009 WL 2948524, *4, the Court stated:

> The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Two theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory. The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as race. *See, e.g., id.; McLaughlin v. Florida,* 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). To assert a protected class claim, the plaintiff must demonstrate that (1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently. *See Oliveira*

*v. Twp. of Irvington,* 41 F. App'x 555, 559 (3d Cir.2005) (observing that a *prima facie* case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals"); *Keenan v. City of Phila.,* 983 F.2d 459, 465 (3d Cir.1992). Under this theory a plaintiff "must prove the existence of purposeful discrimination" by defendants. *Keenan,* 983 F.2d at 465.

Here, Plaintiffs claim that they and other property owners of Indian descent and who practiced the Hindu religion were treated differently by Defendants compared with other similarly situated property owners who were not Indian and Hindus. Plaintiffs claim that their property was unfairly selected for enforcement of property maintenance requirements and laws as well as zoning regulations based on their Indian national origin and their Hindu religion. As mentioned, we find that the evidence is disputed with respect to Plaintiffs' claims. (*See* Doc. 119, pp. 10-24).

Plaintiffs must prove that they were treated differently then similarly situated property owners who were not Indian and Hindus, and the Plaintiffs must produce evidence from which a racially discriminatory purpose can be inferred. *Barnes Foundation*, 942 F.Supp. at 983. In this case, we find that Plaintiffs have produced sufficient evidence to create disputed material facts as to whether they were treated differently than similarly situated  property owners who were not Indian and Hindus. (*See* Doc. 119, pp. 10-24). *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411 (3d Cir. 2003). The Third Circuit, in *Desi's Pizza*, stated that "the Plaintiffs' claims that the Defendants' alleged campaign of harassment violated the Equal Protection Clause ... rely on the premise that the Defendants' actions were undertaken with a racially discriminatory intent." 321 F.3d at 424. The Third Circuit Court also found that the Plaintiffs' equal protection claim was "predicated on the allegation that the Defendants' various actions against the Plaintiffs were motivated by a desire to drive African-Americans and Latinos out of Wilkes-Barre." *Id*. at 415. The

Third Circuit Court then stated that, "[i]t is well established, however, that selective prosecution may constitute illegal discrimination even if the prosecution is otherwise warranted."[11] *Id*. at 425. The Third Circuit Court indicated that the Plaintiffs alleged that Desi's "was treated in a 'far harsher manner than other businesses similarly situated.'" *Id*. at 417.

After the Third Circuit Court, in *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, remanded the case to the District Court and after discovery was completed, Defendants moved for summary judgment on Plaintiffs' claims, including their equal protection claims under §1983. In August 2006, the Court found that there was enough evidence produced so that a jury must determine if Desi's Pizza was singled out for selective enforcement as compared to the other identified bars, and if the Defendants' motivation was the impermissible consideration of the predominantly African-American and Latino clientele of Desi's Pizza.[12] *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 01-0480, M.D. Pa. August 23, 2006 Memorandum).

The Court in *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 01-0480, M.D. Pa. August 23, 2006 Memorandum, found that Plaintiffs produced enough evidence to show the two required elements of their equal protection claim against the individual Defendants, McGroarty and George.  Thus,

---

[11]This Court in its March 12 2009, Memorandum also cited to  *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d at 425, and stated that "[w]hile a municipality has discretion in enforcing its laws, selective enforcement can amount to an equal protection violation even if the Plaintiff is guilty of the underlying violation."  *See*  Doc. 23, p. 6.

[12]The Court in *Desi's Pizza, Inc. v. City of Wilkes-Barre,* also found that the Plaintiffs did not offer evidence with  respect to their *Monell* claim under the Fourteenth Amendment that their equal protection right was violated pursuant to a policy or custom of Wilkes-Barre to drive out minorities from the City. Thus, the Court dismissed Wilkes-Barre as a Defendant in *Desi's Pizza, Inc. v. City of Wilkes-Barre,* 01-0480, M.D. Pa. August 23, 2006 Memorandum.

the Court denied Defendants' Motion for Summary Judgment with respect to the Plaintiffs' equal protection claim under §1983 against the individual Defendants.  *See Desi's Pizza, Inc. v. City of Wilkes-Barre,* 01-0480, M.D. Pa. (M.D. Pa. August 23, 2006).

As stated, in the instant case, Plaintiffs base their equal protection claims against Defendants on the traditional theory and  there is no dispute that Plaintiffs are members of a protected class based on their Indian nationality and Hindu religion.  As the Court in *D'Altilio v. Dover Tp.*, 2009 WL 2948524, *4, stated:

> In order for his equal protection claim to survive summary judgment under the traditional theory, [Plaintiff] must present evidence that the township's treatment of similarly situated employees outside his protected class differed from the treatment he received. [Plaintiff] qualifies as a member of a protected class based upon his Italian descent. *See Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 n. 4, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (listing ancestry as a suspect class and referring to national origin as an example of a suspect class with a "history of purposeful unequal treatment"). Therefore, the court will turn to the question of whether defendants treated similarly situated employees outside the class differently.

With respect to the second element which Plaintiffs must establish, we agree with Plaintiffs (Doc. 119, pp. 10-24) and find that the evidence is disputed as to whether Defendants treated similarly situated property owners who were not of Indian descent and who did not practice Hindu religion differently with respect to their enforcement of EPT's building and zoning ordinances, and that the evidence is disputed as to whether Defendants had purposeful discrimination.  Plaintiffs have sufficiently shown that Defendants approved of the framing at the 3 Cassatt Street property for the former owner, Mowery, and that before they bought the property on September 5, 2007, the rough wiring and plumbing were already preformed by Mowery.  Plaintiffs produced evidence that after they bought the property, Defendants then determined that the framing had to be again

inspected and applied the PA UCC rules and regulations even though the property was grandfathered in under the pre-UCC rules and regulations.  Plaintiffs contend that they were singled out based on their nationality and religion to stricter building enforcement and, that the framing at the property performed by Mowery, which was previously approved by Defendant EPT, should have been grandfathered in and should have been found compliant with the building code in effect at the time Mowery did the framing, prior to the enactment of the PA UCC.  Plaintiffs also argue that the Stop Work Order Defendant Shultz issued on November 20, 2007 (Doc. 104, Ex. 8), against the property was irrational and shows that Shultz intentionally treated them differently from other similarly situated property owners and, that there was no rational basis for the difference in treatment.  Plaintiffs further contend that even after the Cumberland County Court immediately lifted the Stop Work Order on January 16, 2008, Defendants intentionally delayed lifting the Stop Work Order for three days.

Defendants argue that Plaintiffs' allegations are not supported by sufficient evidence and that the Court should grant their Summary Judgment Motion with respect to Plaintiffs' §1983 equal protection claims.  We do not agree with Defendants.  We find that Plaintiffs have produced sufficient evidence to support their §1983 equal protection claims and that a reasonable jury could find that Defendants treated them differently from similarly situated persons outside of their protected class.  (*See* Doc. 119, pp. 10-24). For example, Plaintiffs produced the June 20, 2007 letter Defendant Shultz sent to Mowery regarding the expiration of Mowery's building permit for the property.  In the letter, Shultz indicated that the 1995 CABO Code (*i.e.* the pre-PA UCC regulations) applied with respect to any of the completed construction of the property and that the

requirements of the 2006 International Residential Code would be applied for the remainder of the construction not yet performed. (Plaintiffs' Ex. 8). However, Plaintiffs have sufficiently shown that when they bought the property, Defendant Shultz was requiring them to comply with the new stricter building requirements, instead of the 1995 CABO Code, regarding the framing of the property already performed by Mowery. Further, we find that Plaintiffs have sufficiently shown that when they complained about the several code violations by Roadcap in the adjacent property to their property and the lack of enforcement of the EPT's rules with respect to Roadcap, Defendants intentionally told Roadcap about Plaintiffs' complaints and Roadcap then threatened Plaintiff Mr. Chinniah. (Doc. 104, Exs. 11 and 12, Plaintiffs' Exs. 5 and 16 17, 18). Plaintiffs have also shown disputed facts that when the threat incident was reported to the EPT police, no action was taken. As a result, Plaintiffs have shown that they are afraid to return to their property, that they have not been able to complete the buildings on their property to the present day, and that they continue to pay the mortgage and taxes on the property.

Plaintiffs have also produced evidence that the Kapoor family, who were also Indians and owned property in EPT, were treated differently than non-Indian property owners and that Defendants more strictly enforced the building Code rules against the Kapoors. (Plaintiffs' EX. 22, 25, 26, 27, and 28). As discussed, we find that the evidence is disputed as to whether Defendants more strictly enforced the building Code rules against the Kapoors.

Plaintiffs have produced evidence that after they bought the property in September 2007, Defendant EPT initiated a new requirement with respect to Units 3A and 3B in that the Units would need three parking spaces per Unit. Plaintiffs show that Defendant EPT was requiring them

to use 3C of the property, a vacant lot,  only for parking for the 3A and 3B parcels.  (Plaintiffs' Ex. 10).   Plaintiffs have submitted evidence to show that Defendant EPT sanctioned the alleged unlawful Stop Work Order which Defendant Shultz issued against their property as part of Shultz's alleged attempt to treat them differently than non-Indian property owners, and that EPT was aware that Shultz waited for three days to remove the Stop Work Order in contravention of the County Court's January 15, 2008 Order.  Plaintiffs state that the Stop Work Order was reviewed by several EPT policymakers, including Gill, Owen, Gould and EPT Commissioners.  Plaintiffs cite to their Exs. 12 and 13.  Plaintiffs further state that EPT and its official treated similarly situated non-Indian property owners like Roadcap differently than Indian property owners and knowingly allowed its officials to more strictly enforce the code regulations against Indian owners since EPT officials allowed Roadcap to have a shed on his property without a permit  and that it was not until this matter was brought to Mr. Owen's attention during his deposition in this case, did Owen take action to require Roadcap get a permit.  Plaintiffs also indicate that EPT officials allowed the numerous violations to exist on Roadcap's property near their property and did nothing about them until Mr. Chinniah started to complain about them.  As discussed above, the evidence is disputed if EPT officials then leaked the complaints to Roadcap and if Roadcap then threatened Mr. Chinniah.  The evidence is also disputed as to whether Mr. Chinniah specifically identified Roadcap and if the EPT police took no action against Roadcap regarding Mr. Chinniah's police complaint about the threats.

Also, while Defendants point out that there were not code violations found by EPT's Property Maintenance Inspectors (Mr. Gould and Ms. Dunkle) with respect to the other properties

owned by non-Indians with alleged violations since there were no entries in EPT's Property Maintenance Reports and database, Plaintiffs contend that several pages of the Reports they received from Defendants during discovery were missing pages and that they found several discrepancies between the information they were provided in the redacted summary logs and the corresponding entries in the Report which they were provided.

Further, as discussed, Plaintiffs submit evidence to show that EPT also treated other Indian property owners, namely, the Kapoors, differently than non-Indian owners, such as the owners of the 300 Fourth Street property (the Zehrings).

We thus  find that Plaintiffs have sufficiently shown that material facts are disputed with respect to their §1983 equal protection claims against Defendant Shultz in his individual capacity and against Defendant EPT under *Monell*.

Based on the above discussion, we find that Plaintiffs presented sufficient evidence to show that there a genuine issues of material fact with respect to their §1983 equal protection claim against Defendant EPT.   As mentioned, to the extent Plaintiffs have named EPT as a Defendant, they are asserting a claim pursuant to *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978); *D'Altilio*, 2009 WL 2948524, *5.  We find that Plaintiffs' municipal liability claim against Defendant EPT should proceed to trial.  *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).   Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies."  *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9.  *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.); *Connick, supra*.

As the *Malles* Court stated:

> According to the teaching of *Monell v. Department of Social Services,*
> 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County
> "can be sued directly under § 1983 ... [when] the action that is alleged
> to be unconstitutional implements or executes a policy statement,
> ordinance, regulation, or decision officially adopted and promulgated
> by [Lehigh County's] officers" or where the constitutional deprivations
> occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98
> S. Ct. 2018.

*Id.*, 2009 WL 2258623, *7.

In *D'Altilio*, 2009 WL 2948524, *5, the Court held that municipalities cannot be held liable under §1983 for the acts of their employees under *respondeat superior*. The Court in *D'Altilio*, 2009 WL 2948524, *5, stated that "a municipality may be held liable if the Plaintiff can 'identify a municipal 'policy' or 'custom' that caused the Plaintiff's injury." (Citations omitted).

As the *Kokinda* Court stated:

> A municipality cannot be held liable for the actions of its
> employees under § 1983 based upon *respondeat superior*.
> *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978). However, "the government as an
> entity is responsible under § 1983" when it "caused" the Plaintiff's
> injury; that is, "when execution of a government's policy or custom,
> whether made by its lawmakers or by those whose edicts or acts
> may fairly be said to represent official policy, inflicts the injury."
> *Id.* at 694, 98 S.Ct. 2018. Where, as here, Plaintiff alleges that
> the flawed policy is a failure to train, the municipality can be held
> liable when "'that failure amounts to "deliberate indifference . . .
> [to the constitutional rights of persons with whom the police come
> in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324
> (3d Cir. 2005) (citations omitted). There must also be a causal
> nexus, in that the "'identified deficiency in [the] training program
> must be closely related to the ultimate 'constitutional'' injury."
> *Id.* at 325 (citations omitted).

*Kokinda*, 557 F. Supp. 2d at 590-91.

Further, the Court in *D'Altilio*, 2009 WL 2948524, *5, stated:

A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir.1990) (citations omitted); *see also Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir.2007) (reiterating that municipal policy exists when an individual with final decisionmaking authority "issues an official proclamation, policy, or edict"). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir.2003) (quoting *Brown*, 520 U.S. at 404). The policy or custom upon which the plaintiff bases a claim must emanate from individuals with the authority to promulgate municipal standards in the relevant area. *See LaVerdure v. County of Montgomery*, 324 F.3d 123, 126 (3d Cir.2003) ("To be a policymaker for § 1983 purposes, an official must have *final* policymaking authority."). A plaintiff must demonstrate either that the policymaker's action violated the plaintiff's rights or that the policymaker failed to act when presented with an obvious need for action, rendering the municipality "deliberately indifferent" to the situation. *Natale*, 318 F.3d at 584 (quoting *Brown*, 520 U.S. at 417-18).

The Court in *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3d Cir. 1989), held that liability for state officials can arise "from their policies maintained in deliberate indifference to action taken by their subordinates." According to *Stoneking*, "a plaintiff must do more than show the defendant could have averted her injury and failed to do so. In order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the [harm] and that the defendant acted with deliberate indifference to that [harm]. In order to establish deliberate indifference on the part of the defendant, 'something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm' to plaintiffs." *Id.; Black by Black v. Indiana Area School District*, 985 F.2d 707, 712-13 (3d Cir. 1993) (quoting *Colburn*, 946 F.2d at 1025). Plaintiff must "demonstrate, that through its

deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Garcia v. Newtown Tp.* –F.Supp.2d–, 2011 WL 2313662, *14 (E.D. Pa. 6-10-11)(citation omitted).   The deliberate indifference standard requires "proof that a municipal actor disregarded a known or obvious consequence of his action."   *Id.*(citation omitted).

Based on our above discussion, we find that Plaintiffs have sufficiently established their municipal liability claim against Defendant EPT under *Monell* and that there exists genuine issues of material fact with respect to this equal protection claim.   Plaintiffs have shown that Defendant EPT had knowledge of selective enforcement of building code requirements by its employees against Indian property owners, such as the Stop Work Order issued against them and the actions taken against the Kapoors.   Plaintiffs also have shown that disputed evidence exists as to whether the employees of Defendant EPT did not equally enforce the ordinances against other non-Indian property owners such as Roadcap, and, that when Mr. Chinniah complained about the disparate treatment and lack of enforcement with respect to Roadcap's property, EPT officials leaked the complaints to Roadcap who in turn threatened Mr. Chinniah.   We find that issues of material fact exist as to whether Defendant EPT had a pattern of discrimination as to Indian property owners and whether EPT maintained an unconstitutional custom or policy that caused the alleged constitutional violation to Plaintiffs.   We find that there is enough evidence for the jury to find in favor of Plaintiffs with respect to their §1983 equal protection claim against Defendant EPT.

Based on *Kokinda, Meyers*, and *Malles*, we find Plaintiffs' evidence  sufficiently shows that Defendant EPT caused Defendant Shultz's alleged conduct by having customs, policies, practices and procedures, and that this conduct gave rise to the constitutional violations alleged in Plaintiffs'

Amended Complaint.  Therefore, we will recommend that Defendants' Summary Judgment Motion be denied with respect to Plaintiffs' §1983 equal protection claim against Defendant EPT.

While Defendants have submitted evidence to controvert Plaintiffs' evidence and Plaintiffs' equal protection claims against them, we find that there are too many disputed facts as to whether Defendants subjected Plaintiffs and other Indian property owners to different treatment than similarly situated non-Indian property owners.  We find that the evidence could support a jury verdict in favor of Plaintiffs, that the disputes in the evidence raise genuine issues of material fact, and that the Court should deny Defendants' Summary Judgment Motion with respect to Plaintiffs' equal protection claims.  (Doc. 104).  *See Desi's Pizza, Inc. v. City of Wilkes-Barre,* 01-0480, M.D. Pa. August 23, 2006 Memorandum).

## VI. Recommendation.

Based on the foregoing, it is respectfully recommend that Defendants' Summary Judgment Motion (**Doc. 104**) be granted with respect to Plaintiffs' claims for monetary damages against Defendant Shultz in his  official capacity.  It is also recommended that the Court grant Defendants' Summary Judgment Motion (**Doc. 104**) with respect to Plaintiffs' equal protection claim against Defendant Schultz in his official capacity.  Additionally, it is recommended that Defendants' Motion for Summary Judgment (**Doc. 104**) be granted to the extent Plaintiffs are deemed as raising a separate procedural due process claim and a separate substantive due process claim. Finally, it is

recommended that Defendants' Summary Judgment Motion **(Doc. 104)** be denied with respect to Plaintiffs' equal protection claims against Defendant EPT and against Defendant Shultz in his individual capacity.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 29, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GNANA M. CHINNIAH a/k/a          :     CIVIL ACTION NO. **1:CV-08-1330**
GHANA CHANDRA M. CHINNIAH        :
and SUGANTHINI CHINNIAH,         :     (Chief Judge Kane)
                                 :
              Plaintiffs         :     (Magistrate Judge Blewitt)
                                 :
         v.                      :
                                 :
EAST PENNSBORO TOWNSHIP and      :
JEFFREY S. SCHULTZ,              :
                                 :
              Defendants         :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 29, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_____  **s/ Thomas M. Blewitt**
                                     **THOMAS M. BLEWITT**
                                     **United States Magistrate Judge**

**Dated: February 29, 2012**